UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DISTRICT

MICHELE HILL-BROWN and MICHAEL        **PLAINTIFFS**
BROWN, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVES ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES
OF FLYNN BROWN

VS.                                  CASE NO. <u>3:23-cv-3119-DPJ-LGI</u>

**JACKSON STATE UNIVERSITY**              **DEFENDANT**

## COMPLAINT

**COME NOW**, Plaintiffs, Michele Hill-Brown and Michael Brown, individually and on behalf of the wrongful death beneficiaries of Flynn Brown ("Flynn"), by and through her attorney, and files this Complaint against the Defendant, and in support of this lawsuit, Plaintiffs respectfully show unto this Honorable Court as follows:

## INTRODUCTION

1.     Plaintiffs bring claims pursuant to 28 U.S.C. § 1332; the Mississippi Tort Claims Act ("MCTA"); Miss. Code § 11-46-1 *et seq.* and the Wrongful Death Statute, Miss. Code Ann. § 11-7-13 alleging that employees of Jackson State University, while acting within the course and scope of their employment, engaged in negligent acts or omissions and/or displayed reckless disregard for the safety well-being of one of its students, Flynn Brown, ultimately resulting in his tragic and untimely death.

1

**PARTIES**

2.      Flynn Brown, now deceased, was at all times pertinent hereto a citizen of the State of New Jersey.

3.      Plaintiffs Michele Hill-Brown and Michael Brown are the natural parents of Flynn Brown.  Mr. and Mrs. Brown are and were at all times pertinent hereto citizens of the State of New Jersey.

4.      Defendant Jackson State University (hereinafter "JSU" or "University") is and was at all times pertinent hereto, a public university.  It is an instrumentality of the State of Mississippi and is subject to the requirements of the Mississippi Tort Claims Act ("MCTA"), Miss. Code § 11-46-1 *et seq.*

5.      Plaintiffs have served Defendants in this matter by delivering a copy of the Summons and Complaint to the Attorney General of the State of Mississippi in accordance with Miss. Code §11-45-3.

**JURISDICTION AND VENUE**

6.      This Court has federal diversity jurisdiction under 28 U.S.C. § 1332 as the amount in controversy in this action seeks exceeds $75,000.00 (Seventy-Five Thousand Dollars) and is between citizens of at least two different states.

7.      The pendant state law claims include the MCTA; the Wrongful Death Statute, Miss. Code Ann. § 11-7-13; and common law claims of negligence.

8.      Defendant, Jackson State University, resides in this district and a substantial part of the events and/or omissions giving rise to the claims occurred in

this district venue; therefore, venue is appropriate in the Southern District of Mississippi, Northern Division pursuant to 28 U.S.C. § 1391.

## NOTICE OF CLAIM

9.     Pursuant to Miss. Code Ann. § 11-46-11, Plaintiffs sent its Notice of Claim letter upon Defendant's then-chief executive officer, Mr. Thomas Hudson, on or about February 16, 2023 via certified mail.

10.     Plaintiffs served a second Notice of Claim letter on Defendant's interim chief executive officer, Dr. Elayne Hayes-Anthony, on March 27, 2023 via process server.

11.     To date, JSU has not responded in writing to either of Plaintiffs' Notice of Claim letters.  Plaintiffs submit that its Notice of Claim letters have been on file and Defendant has been on notice at least ninety-five (95) days prior to the filing of the instant lawsuit pursuant to Miss. Code Ann. § 11-46-11(3)(a).

## FACTS

12.     Plaintiffs incorporate by reference all previous paragraphs above as though fully set forth below.

13.     On or about August 19, 2022, Flynn Brown started attending school at JSU after transferring from Lackawanna College in Scranton, Pennsylvania.

14.     Flynn   was   a   22-year-old   student-athlete   studying   business administration at JSU.

3

15.   Flynn transferred to JSU to compete for a position on the school's football team.

16.   Flynn was assigned on-campus housing at 717E John W. Dixon Hall ("Dixon Hall").

17.   Flynn shared a suite consisting of two dorm rooms connected by a common area with three other students.

18.   Flynn shared Room 717E with a roommate, Randall Smith ("Randall") of New Orleans, Louisiana.

19.   Upon information and belief, it is believed that Randall had a history of violence, supported by at least one prior arrest for assault at the time of his enrollment at JSU.

20.   During August and September 2022, Flynn and the other two suitemates in 717 Dixon experienced a series of thefts involving their belongings, which included, but were not limited to, money, clothing items, and food.

21.   Flynn and the other two suitemates suspected Randall as the likely perpetrator of these thefts.

22.   Based upon information and belief, it is asserted that either one or both of the suitemates reported the thefts to the Residence Hall Receptionist for Dixon Hall, the Resident Assistant for Dixon Hall, and/or employees of JSU's Department of Public Safety who were working during the relevant period outlined in this Complaint.

23. JSU's staff failed to initiate an investigation into Randall or address the allegations of Randall's misconduct in response to the concerns raised by the suitemates.

24. In early October 2022, Flynn discovered the absence of his iPad and various clothing items from his dormitory.

25. Flynn, suspecting Randall of this theft as well, alerted campus police of the thefts and concerns for his safety.

26. Based upon information and belief, Flynn reported allegations to either the Resident Assistant for Dixon Hall and/or JSU's Department of Public Safety.

27. JSU maintains a student handbook ("handbook") specifying university policy regarding campus violence, student protection and safety, student misconduct, and the procedures for handling student incident reports, among other matters.

28. According to JSU's handbook, the University asserts "an obligation to protect members of the university community from physical harm or from a student whose ongoing presence on campus poses a clear and present danger to themselves or others."

29. The handbook additionally provides that reports of student misconduct received by JSU's Public Safety Department should be submitted to the Dean of Students Office in the form of a written incident report for review of the allegations and to determine the appropriate individual or University entity to hear the case.

30. JSU did not honor its obligation to protect, Flynn, one of its students.

5

31.     JSU did not follow its policy with regard to student complaints of misconduct.

32.     Again, JSU's employees disregarded a student report concerning Randall.

33.     JSU took no action to investigate the theft allegations raised by Flynn against Randall.

34.     Randall was permitted to continue residing on campus as Flynn's roommate.

35.     In the weeks following Flynn's incident report, Flynn and his suitemates continued to have issues with Randall.

36.     Flynn and his suitemates asked Randall about the thefts.

37.     Specifically, Flynn told Randall that he knew Randall had stolen his iPad and other items by tracking the device, which indicated that it was located in New Orleans.

38.     Randall confessed to the theft of the iPad.

39.     Despite his confession, Randall persisted in his malicious behavior towards Flynn.

40.     In the days immediately following his confession, Randall took steps to acquire a firearm with the intent of using it to shoot and kill Flynn.

41.     In the early morning hours of December 2, 2022, Randall carried out his plan to kill Flynn.

42.    Afterwards, he attempted to conceal his actions by moving Flynn's body into a vehicle in the dormitory parking lot and cleaning the dorm room.

43.    Despite being aware of the risk to Flynn, JSU failed to take any measures to safeguard him during the fifty-seven-day period following Flynn's complaint of student misconduct.

44.    JSU did not follow its own policies for handing complaints of student misconduct.

45.    JSU neglected to conduct an investigation into the reported crimes that Flynn and the other suitemates complained about regarding Randall.

46.    JSU did not perform a threat or behavioral assessment concerning Randall.

47.    JSU did not remove Randall from 717 Dixon despite repeated concerns.

48.    JSU's complete abandonment of its duty of care led Flynn's death.

### FIRST CAUSE OF ACTION – NEGLIGENCE

49.    Plaintiffs re-allege and hereby incorporate by reference all of the preceding paragraphs of this Complaint as if set forth herein.

50.    Throughout the pertinent period outlined in this Complaint, the employees of the Defendant consistently operated within the course and scope of their employment.

51.    Defendant had actual notice of student misconduct concerning Randall's alleged thefts from Flynn and his other suitemates.

7

52.     Defendant had actual notice that Flynn feared for his safety.

53.     When Defendant became aware of a potential danger to a Flynn, Defendant, by and through their employees, servants, and/or agents had a duty to exercise reasonable care to protect Flynn from a foreseeable risk of harm.

54.     Defendant's official handbook specifies the University's obligation to protect members of the university community from physical harm or from a student whose ongoing presence on campus poses a clear and present danger to themselves or others.

55.     Defendant was in a position to prevent harm to Flynn but ultimately did nothing despite having notice of a risk and policies in place to address risk.

56.     Defendant breached its duty to Flynn by failing to perform acts, including but not limited to:

a)      failing to follow its own policies and procedures regarding student complaints;

b)      failing to investigate to Flynn's complaints concerning Randall;

c)      failing to perform a threat or behavioral assessment concerning Randall;

d)      failing to remove Randall from 717 Dixon; and

e)      failing to take any action whatsoever to intervene or end Randall's targeting of Flynn and the other suitemates.

57.     As a proximate cause of Defendant's failure to exercise ordinary care, Flynn lost his life.

58.     As a result of Defendant's negligence, Plaintiffs are entitled to the recovery of compensatory damages against Defendant.

**SECOND CAUSE OF ACTION – MCTA RECKLESS DISREGARD**

59.     Plaintiffs re-allege and hereby incorporate by reference all of the preceding paragraphs of this Complaint as if set forth herein.

60.     Throughout the pertinent period outlined in this Complaint, the employees of JSU's Department of Public Safety consistently operated within the course and scope of their employment.

61.     Defendant and its employees had actual notice of multiple theft allegations concerning Randall.

62.     Defendant and its employees had actual notice that Flynn feared for his safety.

63.     Defendant had established policies on how to handle complaints of student misconduct.

64.     Defendant's decision to disregard its own policies and take no action to protect Flynn evinced a conscious indifference for the safety and well-being of Flynn.

65.     Flynn was not engaged in criminal activity at the time of his death.

66.     Therefore, the act(s) and/or omission(s) of Defendant and its employees constitute a reckless disregard for the safety and well-being of Flynn as defined under Mississippi law.

67.     As a proximate cause of Defendant and its employees' reckless act(s) and/or omission(s), both in their official and personal capacities, Flynn lost his life.

68.     As a result of Defendant's reckless disregard, Plaintiffs are entitled to the recovery of compensatory damages against Defendant.

## REQUESTED RELIEF

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs request the following relief:

69.     Plaintiffs seek judgment against Jackson State University for $500,000.00, or an aggregate sum equal to the maximum amount of recovery allowed by the Mississippi Tort Claims Act for, among other things:

    a.     personal injuries;

    b.     pain and suffering

    c.     mental anguish

    d.     tuition and educational-related expenses;

    e.     funeral expenses;

    f.     school-related travel expenses;

    g.     impaired earning capacity;

    h.     lost wages;

10

    i.     household services;

    j.     loss of consortium;

    k.    prejudgment interest;

    l.     post judgment interest;

    m.   attorney's fees and costs; and

    n.    any other relief, of an equitable or legal nature, which the Court deems

just or proper upon the circumstance.

**RESPECTFULLY SUBMITTED,**

**MICHELE HILL-BROWN and MICHAEL BROWN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF FLYNN BROWN**

BY: _____

      **CHRISTOPHER W. ESPY, MSB #102424**

OF COUNSEL:

CHRISTOPHER W. ESPY, MSB #102424
**ESPY LAW, PLLC**
320A Edgewood Terrace Drive
Jackson, Mississippi 39206
Telephone: 601-812-5300
Facsimile: 601-510-9050
Email: chris@espylaw.com

**ATTORNEY FOR PLAINTIFF**